In the Supreme Court of Georgia

Decided: January 22, 2019

S18G0146. PLUMMER v. PLUMMER.

BOGGS, Justice.

This appeal involves the interpretation of a provision of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Georgia as OCGA § 19-9-40 et seq. The case stems from the trial court's dismissal of a child custody modification action, filed by Christopher Thomas Plummer (Father), on the ground that the trial court did not have jurisdiction to consider the matter, because neither Father, nor Elia Marie Plummer (Mother), nor the child was living in Georgia at the time of the court's dismissal. The Court of Appeals affirmed the trial court's ruling, and we granted Father's petition for certiorari posing the following question: "Did the trial court properly dismiss the custody modification action for lack of jurisdiction pursuant to OCGA § 19-9-62 (a) (2)?" We conclude that the trial court erred in dismissing the action on this ground, and we therefore reverse.

1. The record reveals that on December 12, 2013, the Camden County Superior Court granted the final judgment and decree of divorce that awarded Father and Mother joint legal custody of their minor child with Mother, who had moved to Florida with the child while the divorce action was pending, having primary physical custody. A parenting plan was filed, outlining specific visitation for the child and Father. Thereafter, Father filed a motion for contempt in Camden County, and the superior court granted the motion on April 30, 2015.[1]

On May 21, 2015, Father, who continued to live in Georgia, filed an action to modify custody, which was served on Mother in June 2015. On July 1, 2016, the U. S. Navy relocated Father to Norfolk, Virginia. The court issued a temporary order on Father's complaint for modification on July 8, 2016. However, on August 19, 2016, Mother filed a motion to dismiss the modification action for lack of jurisdiction, alleging that OCGA § 19-9-62 (a) (2) required

---

[1]The court found that Mother: failed to abide by the parenting plan and engaged in a pattern of alienation; failed to provide Father with visitation; failed to place Father's name on school paperwork or to include him in therapy appointments; filed for an injunction in Florida to restrict Father's visitation; and accused Father of child abuse. The court concluded that the actions filed by Mother against Father in Florida "were dismissed or found to be unsubstantiated," and it awarded Father an additional week of summer visitation for 2015.

dismissal of the action because the relocation of all parties from the state of Georgia divested the trial court of subject matter jurisdiction.

The trial court held a hearing on Mother's motion to dismiss. Following that hearing, the court, in dismissing the action, determined that it had "lost subject matter jurisdiction pursuant to OCGA § 19-9-62 (a) (2)": "[Father] lives in Virginia, [Mother] lives in Florida with the child, and since neither the child nor the parents now reside in Georgia, this Court has lost its exclusive, continuing jurisdiction over the child custody determination."[2]

Father appealed the order, and the Court of Appeals affirmed. Plummer v. Plummer, 342 Ga. App. 605 (804 SE2d 179) (2017). We granted Father's petition for certiorari to consider whether the trial court properly concluded that it was without jurisdiction to rule on the custody modification action. The parties agree that the trial court had jurisdiction over the action at the time it was filed. But the question on review is whether the court later lost its jurisdiction to consider the petition to modify custody after neither the parents nor the child remained in the state.

---

[2] At some time during August 2016, Mother and the child moved from Florida to Arizona.

2. As explained by the Court of Appeals, in 2001, Georgia adopted the UCCJEA to replace its predecessor, the Uniform Child Custody Jurisdiction Act ("UCCJA").[3] The provision at issue here is OCGA § 19-9-62, which is materially identical to UCCJEA § 202. OCGA § 19-9-62 provides in relevant part:

> (a) Except as otherwise provided in Code Section 19-9-64, a court of this state which has made a child custody determination consistent with Code Section 19-9-61 or 19-9-63 has exclusive, continuing jurisdiction over the determination until . . . (2) A court of this state or a court of another state determines that neither the child nor the child's parents or any person acting as a parent presently resides in this state.

Father argues that this section must be interpreted to harmonize with other states' interpretations and the official comment to the UCCJEA. OCGA § 19-9-101 provides: "[i]n applying and construing this uniform Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." Every other state that has addressed this issue

_____

[3] We note that 49 states, the District of Columbia, and one U. S. territory have adopted the UCCJEA in some form. The Act was most recently introduced in the 50th state, Massachusetts, in 2018. See the Uniform Law Commission website: http://www.uniformlaws.org/LegislativeFactSheet.aspx?title=Child%20Custody%20Jurisdiction%20and%20Enforcement%20Act.

has concluded that the jurisdictional question is determined as of the time a child custody modification action is filed. See, e.g., State ex rel. Z.Z. v. State, 310 P3d 772, 777 (I) (Utah App. 2013) (considering official comment to UCCJEA § 202 that jurisdiction attaches at commencement of proceeding to conclude that jurisdiction attached at time of filing of DCFS motion for expedited placement and custody); Wahlke v. Pierce, 392 SW3d 426, 429 (Ky. App. 2013) (considering official comment to UCCJEA § 202 that jurisdiction attaches at commencement of proceeding to conclude that "a family court's jurisdiction to modify custody is determined at the time the motion to modify is filed"); Beam v. Beam, 266 P3d 466, 469 (III) (Haw. App. 2011) (considering official comment to UCCJEA § 202 that jurisdiction attaches at commencement of proceeding to conclude that family court retained exclusive, continuing jurisdiction after parties moved away from state because modification proceeding was still pending). And the official comment to UCCJEA § 202, from which OCGA § 19-9-62 was drawn, provides with regard to the language of subparagraph (a) (2):

> Jurisdiction attaches at the commencement of a proceeding. If State A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the State prior to the conclusion of proceeding. State

5

B would not have jurisdiction to hear a modification unless State A decided that State B was more appropriate under Section 207.[4]

Father asserts that, in accordance with this comment and the decisions on this issue, subject matter jurisdiction attached when he filed the modification action on May 21, 2015, and that the trial court therefore had jurisdiction to rule on his petition. Mother argues that the Court of Appeals was not required to follow the non-binding official comment to the UCCJEA or decisions from other jurisdictions and that, under the rules of statutory interpretation, in applying the plain and ordinary meaning of the statute, Georgia lost its exclusive, continuing jurisdiction when she, the Father, and the child no longer lived in Georgia.

In interpreting statutes,

we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

---

[4] The comment also provides that "*unless a modification proceeding has been commenced*, when the child, the parents, and all persons acting as parents physically leave the state to live elsewhere, the exclusive, continuing jurisdiction ceases." (Emphasis supplied.)

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (1) (751 SE2d 337) (2013). We are mindful that in interpreting the meaning of OCGA § 19-9-62 (a) (2), "we do not look at the text in isolation. Rather, to determine its meaning, we also consider its context." (Citations and punctuation omitted.) Undisclosed LLC v. State, 302 Ga. 418, 420 (2) (a) (807 SE2d 393) (2017). "For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (Citations omitted.) Tibbles v. Teachers Retirement System of Georgia, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015).

In substance, OCGA § 19-9-62 (a) (2) provides that a court which has made a child custody determination has exclusive, continuing jurisdiction over that determination – that is, that court (and only that court) has jurisdiction to modify the child custody determination – unless and until there is a judicial finding that neither the child nor the child's parents reside in the state. Mother argues that the plain meaning of this subsection supports the trial court's dismissal of Father's modification action because the court made that determination at the time of its order. However, while subsection (a) (2)

7

identifies the circumstance in which a court loses its exclusive, continuing jurisdiction to entertain modification actions – neither the child nor the child's parents reside in the state – it does not specify the point at which that circumstance must exist to divest a court of jurisdiction over a particular modification action. Put another way, the statute does not say whether that circumstance must exist at the time a modification action is filed to divest jurisdiction or whether it can develop at some later point in the proceedings.

(a) Generally, in the context of domestic relations cases, this Court has held that jurisdiction, whether subject-matter or personal, is dependent upon the state of things at the time that an action is filed. See, e.g., Barker v. Barker, 294 Ga. 572, 573-575 (757 SE2d 42) (2014) (in divorce action, once court obtains personal jurisdiction over party to action, jurisdiction continues for subsequent actions that arise out of that action and party cannot escape that continuing jurisdiction by moving to another state); Franek v. Ray, 239 Ga. 282, 285-286 (236 SE2d 629) (1977) ("for purposes of venue and other jurisdictional questions, a person's residence at the time of filing of suit is the determining factor"; venue determined as of date of filing although appellant later moved to Texas); Zuber v. Zuber, 215 Ga. 314, 315 (1) (110 SE2d 370) (1959)

("Jurisdiction of the subject-matter of a suit for permanent alimony depends on existence of the marital relation at the time the action is instituted." (citing Durden v. Durden, 191 Ga. 404, 406 (2) (12 SE2d 305) (1940) (same))). We find nothing in OCGA § 19-9-62 (a) (2) that is inconsistent with this general background rule. And we must presume that the General Assembly, in adopting the Uniform Act, was aware of the background rule and, had it desired to arrive at a different conclusion regarding the jurisdictional guideline therein, it could have so provided. See Grange Mut. Cas. Co. v. Woodard, 300 Ga. 848, 852 (2) (a) (797 SE2d 814) (2017) ("[A]ll statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law." (citation and punctuation omitted)). This background principle supports the conclusion that the trial court had jurisdiction over the child custody modification action because Father resided in Georgia when the modification action was filed.

(b) The official comment to UCCJEA § 202, the decisions in other states, and the statutory direction to promote uniformity in interpretations of the UCCJEA, see OCGA § 19-9-101, also support this conclusion. The background rule in Georgia domestic relations cases seems to be consistent with the

9

background jurisdictional rule in American law generally. See 21 CJS Courts §

90 ("Jurisdiction, once acquired, is not generally divested by subsequent facts,

developments, or events, even events of such a character as would have

prevented jurisdiction from attaching in the first instance. After a court acquires

jurisdiction of the subject matter and the person, intervening events may affect the

nature of the relief available but do not end or extinguish the jurisdiction of the

court."); 20 AmJur2d Court § 96 ("Ordinarily, a court that has acquired

jurisdiction of a case cannot be deprived of jurisdiction by subsequent events in

the course of its proceedings, even if those subsequent events would have

prevented jurisdiction from attaching in the first place."). Consistent with this

general background principle and the understanding that UCCJEA § 202 (a) (2)

does not specify the precise point at which residence is determinative of

jurisdiction for a particular modification action, the official comment to § 202

explains that jurisdiction attaches at the commencement of a proceeding.

Unsurprisingly, that is how other states have understood UCCJEA § 202.

Given the statutory directive to promote uniformity, OCGA § 19-9-101, it is

appropriate to look to decisions in other jurisdictions that have addressed this

issue. And it also is appropriate to consider the official comment, recognizing that

10

jurisdictions that have not yet directly addressed the issue with which we are presented ultimately will do so by considering the official comments.[5] In this way, our approach is similar to the way that we look to the Advisory Committee Notes to the Federal Rules of Evidence in determining the meaning of the new Georgia Evidence Code because the federal appellate courts (which the Georgia Evidence Code directs us to follow) consider those notes in their construction of the evidence rules. See State v. Almanza, ___ Ga. ___ (3) n.5 (Case No. S18G0585; decided Oct. 9, 2018) (Advisory Committee Notes are not binding precedent but are highly persuasive). Indeed, this Court has previously considered the official comments to Uniform Acts. See Cox v. Garvin, 278 Ga. 903, 905-906 (607 SE2d 549) (2005) (considering official comment to section

---

[5] Six states have incorporated the official comment to UCCJEA § 202 as part of their Codes and thus must follow it. See Ala. Code § 30-3B-202; Mont. Code Ann. § 40-7-202; N.C. Gen. Stat. § 50A-202; 23 Pa. Cons. Stat. § 5422; Tenn. Code Ann. § 36-6-217; Va. Code Ann. § 20-146.13. However, even the states that have not done so generally consider the official comments in interpreting their codifications of the UCCJEA, including all those that have actually addressed the issue that we must decide. See, e.g., Slaughter v. Slaughter, No. 11AP-997, 2012 Ohio App. LEXIS 3499, at *26 (Ohio App., Aug. 30, 2012) (official comment to § 202); Watson v. Watson, 724 NW2d 24, 31 (Neb. 2006) (same). See also Harris v. Harris, 922 NE2d 626, 640 (III) (B) (Ind. App. 2010) (official comment to § 110). Indeed, we have found no jurisdiction, and the special concurrence has not identified any, specifically declining to consider the official comments to the UCCJEA.

of Uniform Securities Act); <u>Reis v. Ralls</u>, 250 Ga. 721, 723 (1) (301 SE2d 40) (1983) (considering official comment to section of Uniform Commercial Code).

Thus, our general background rule in domestic relations cases that jurisdiction is determined as of the time an action is filed, along with decisions addressing the issue in other jurisdictions in accord with the official comment to § 202 of the UCCJEA, answer the question not expressly addressed by OCGA § 19-9-62 (a) (2) – the point in the modification proceeding at which the circumstance described in the subsection must exist to divest the court of jurisdiction over that modification proceeding.

3. Accordingly, jurisdiction attached at the time of the filing of Father's petition for modification of custody, the trial court had jurisdiction over the modification action, and that jurisdiction was not lost when Father later was transferred away from Georgia. The court erred in concluding otherwise. For this reason, we reverse the Court of Appeals' affirmance of the trial court's ruling.

<u>Judgment reversed. All the Justices concur, except Peterson, Warren and Bethel, JJ., who concur in Divisions 1, 2 (a), 3, and in the judgment, and concur specially in Division 2 (b).</u>

S18G0146. PLUMMER v. PLUMMER.

Peterson, Justice, concurring specially.

I concur in the construction the majority affords OCGA § 19-9-62 (a) (2). But I cannot join Division (2) (b) of the majority's opinion, which relies on a comment by the Uniform Law Commission. Comments of this sort may be persuasive as scholarly commentary, but we ought not to consider them as evidence of uncodified drafter's intent. See Tome v. United States, 513 U. S. 150, 167 (115 SCt 696, 130 LE2d 574) (1995) (Scalia, J., concurring in part and concurring in the judgment). As the comment at issue here plainly is not scholarly commentary, I can understand the majority's reliance upon it only to be for the purpose of considering uncodified intent of some sort.[1] As we have said many times before, we ought not to do that. See Olevik v. State, 302 Ga. 228, 237-238 (2) (c) (I) (806 SE2d 505) (2017) ("[Our] focus on the objective meaning of statutory text is by necessity, for how can we possibly determine the subjective

---

[1] It's not clear exactly whose intent the comment might evidence. The General Assembly neither drafted nor adopted the comment; rather, the members of the Uniform Law Commission committee that drafted the uniform act drafted the comment. But *their* uncodified intent cannot be relevant to any question before us.

intent of 236 legislators (and a governor) by any method other than focusing on the text they enacted? . . . . Determining the 'intent' of the legislature by means other than considering the text and context of properly enacted statutes would be futile."); Gibson v. Gibson, 301 Ga. 622, 631-633 & n.10 (801 SE2d 40) (2017); State v. Riggs, 301 Ga. 63, 67 (2) (799 SE2d 770) (2017); Deal v. Coleman, 294 Ga. 170, 172 (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and *said what it meant*.") (punctuation and quotations omitted) (emphasis added); Merritt v. State, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) ("[W]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause unreasonable consequences, we venture into dangerously undemocratic, unfair, and impractical territory." (punctuation omitted)); see also Bishop v. State, 341 Ga. App. 590, 593 (802 SE2d 39) (2017) (Bethel, J., concurring) ("Any attempt to discern legislative intent beyond the express language passed by a legislative body is as practical and productive as attempting to nail Jell-O to the wall.").

I also find wholly unpersuasive the majority's references to the General Assembly's stated interest in uniformity. Statutes mean today what they meant when they were enacted. That fundamental principle applies regardless of whatever interpretational directions the General Assembly purports to give. Either the text of OCGA § 19-9-62 (a)(2) meant at the time of its 2001 enactment what the majority says it means, or it does not have that meaning today. That the courts of another state later interpret similar language in a particular fashion cannot change the meaning of Georgia law. Of course, if courts of other states had given the same language a uniform construction *before* the 2001 enactment, that would be relevant legal context for the Georgia statute. But the majority points to no such pre-2001 decisions.

Ultimately, I concur because, as the majority explains in Division (2) (a), pre-2001 Georgia caselaw made clear that jurisdiction in domestic relations cases is determined based on residence at the time an action is filed.[2] Nothing in OCGA § 19-9-62 (a) (2) changed that background rule, so it still applies.

I am authorized to state that Justice Warren and Justice Bethel join in this concurrence.

---

[2] Division (2) (b) suggests such a background rule applies more broadly in American law. The cases cited in the two treatises the majority cites leave me unconvinced, but the clear presence of such a rule in Georgia renders the question purely academic.