311 Ga. 739
FINAL COPY

S20G0931. SEALS v. THE STATE.

PETERSON, Justice.

Defendants in criminal cases may take immediate appeals from final judgments, which OCGA § 5-6-34 (a) (1) defines as when "the case is no longer pending in the court below[.]" In applying this familiar principle, we have often dismissed for lack of jurisdiction appeals in criminal cases because verdicts have been rendered or sentences have been imposed on less than all counts of an indictment or accusation. This case presents the question of whether the same rule applies when one or more counts have been "dead-docketed." It does; dead-docketing, while a common and longstanding practice in Georgia courts, has almost no statutory authority and none that would allow different treatment here. And precedent from our Court of Appeals has for decades made clear that when a count is dead-docketed, the case remains pending in the trial

court. Accordingly, we hold that dead-docketing a count leaves that count undecided and, thus, leaves the entire "case pending in the court below." Such a case cannot be appealed as a final judgment under OCGA § 5-6-34 (a) (1); instead, it requires a certificate of immediate review, which Demarquis Seals did not seek. We therefore affirm the Court of Appeals's dismissal of his appeal.

The relevant facts are not disputed. In June 2017, a grand jury returned an indictment against Seals charging him with one count of rape and one count of child molestation. He was tried before a jury in October 2018. The jury found Seals guilty of child molestation but could not reach a verdict on the rape count, prompting the trial court to declare a mistrial as to that count. On the disposition sheet filed on November 5, 2018, the trial court entered a 20-year sentence of imprisonment on the child molestation count, and noted that the rape count had been mistried and was to be "re-tried." Less than a month later, the trial court entered a separate order placing the rape count on the dead docket.

Seals filed a motion for new trial on November 5, 2018, and subsequently amended it.[1] The trial court denied Seals's motion in August 2019, and Seals filed a timely notice of appeal to the Court of Appeals. The Court of Appeals dismissed the appeal in February 2020, concluding that the dead-docketed rape count caused the case to remain pending in the trial court and that Seals was therefore required to follow the interlocutory appeal procedures to appeal his conviction and sentence on the child molestation count. We granted certiorari to consider whether the Court of Appeals correctly dismissed Seals's appeal.[2]

---

[1] Although Seals's motion was premature, it ripened once the trial court entered a written sentence. See *Southall v. State*, 300 Ga. 462, 467 (1) (796 SE2d 261) (2017).

[2] Seals filed a supplemental brief in which he attached an order from the trial court filed in January 2021 purportedly granting the State's motion to nolle pros the rape count. The trial court did not have jurisdiction to enter that order because the appeal was pending here. See *Tolbert v. Toole*, 296 Ga. 357, 360-361 (2) (767 SE2d 24) (2014) (filing of notice of appeal deprives trial court of jurisdiction until appeal is resolved and the trial court has received and filed the remittitur from the appellate court). Moreover, jurisdiction must be determined at the time of filing. See *Plummer v. Plummer*, 305 Ga. 23, 27 (2) (a) (823 SE2d 258) (2019). And appeals are to be decided based only on the record on appeal. See *Meltzer v. C. Buck LeCraw & Co.*, 225 Ga. 91, 92 (1) (166 SE2d 88) (1969). At the time the notice of appeal was filed, and even at the time that the Court of Appeals dismissed the case for lack of jurisdiction, the trial court had not entered the nolle pros order, much less included that order in the appellate record.

1. *This is a case of statutory construction.*

This appeal turns on what it means for a "case" to become "no longer pending in the court below." In answering that question, we apply the familiar principles by which we construe statutes. "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). That presumption means that "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. (citations and punctuation omitted).

The ordinary public meaning of statutory text that matters is the meaning the statutory text had at the time it was enacted. See *Fed. Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579, 589-590 (2) & n.8 (761 SE2d 332) (2014) (considering original public meaning of statute); cf. *Olevik v. State*, 302 Ga. 228, 235 (2) (c) (i) (806 SE2d 505)

4

(2017) ("original public meaning . . . is simply shorthand for the meaning the people understood a provision to have at the time" it was enacted). Determining such meaning requires considering the text in the context in which it was enacted: "As we have said many times before when interpreting legal text, 'we do not read words in isolation, but rather in context.'" *City of Guyton v. Barrow*, 305 Ga. 799, 805 (3) (828 SE2d 366) (2019) (quoting *Smith v. Ellis*, 291 Ga. 566, 573 (3) (a) (731 SE2d 731) (2012)). "The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text." *City of Guyton*, 305 Ga. at 805 (3) (citing *Undisclosed LLC v. State*, 302 Ga. 418, 420 (2) (a) (807 SE2d 393) (2017); *Olevik*, 302 Ga. at 235-236 (2) (c) (i); and *Deal* 294 Ga. at 172-173 (1) (a)).

In applying these principles to this case, we confront several questions. First, is a "case" with multiple counts still "pending" when some of those counts remain unresolved? As we explain below,

the answer generally is yes. Second, is there anything in Georgia law that would call for a different conclusion when the unresolved count is dead-docketed? As we explain below, both as a matter of the few Georgia statutes that reference dead-docketing, and as a matter of the legal context pre-dating the 1984 enactment of the language of OCGA § 5-6-34 (a) (1), the answer is no.

2. *A case with multiple counts is still pending when one of those counts remains undisposed.*

(a)*The original public meaning of OCGA § 5-6-34 (a) (1) leads us to conclude that a case is not final and is still pending below if one or more counts are unresolved.*

The right of immediate review under OCGA § 5-6-34 (a) (1) has roots dating back more than 150 years. An 1868 version of the predecessor to OCGA § 5-6-34 (a) (1) provided as follows:

> No cause shall be carried to the Supreme Court upon any bill of exceptions, so long as the same is pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause.

Code of 1868, § 4191. This Court construed that provision as meaning that "as long as a defendant remains in the court below or

6

*other issues remain untried there*, the case is pending there, and no final judgment has been had[.]" *Zorn v. Lamar*, 71 Ga. 80, 82 (1883) (emphasis added). Relying on this Court's precedents, the Court of Appeals concluded that the word "cause" as used in the statute, referred "to the entire case, the entire suit or litigation, and the entire question being litigated under the petition; and as long as any portion of the 'cause' is pending in the court below, the 'cause' can not be carried to an appellate court," unless the judgment complained of would have been the final disposition of the case. *Carhart v. Mackle*, 22 Ga. App. 520, 522 (96 SE 591) (1918).

The language of this provision was materially the same for almost 100 years until the Appellate Practice Act was enacted in 1965. See Ga. L. 1965, p. 18, § 1. The Appellate Practice Act changed the language to say that there was a right to an immediate appeal "[w]here the judgment is final — that is to say — where the cause is no longer pending in the court below[.]" Id. Despite the rewording, we concluded that the law regarding reviewable judgments did not "materially change." *O'Kelley v. Evans*, 223 Ga. 512, 513 (156 SE2d

450) (1967). This Court and the Court of Appeals continued to hold that a judgment was not final if there were claims that remained pending below. See, e.g., *Gorrell v. Fowler*, 247 Ga. 67, 67 (273 SE2d 852) (1981); *Farmers Co-op. Ins. Co. v. Hicks*, 227 Ga. 755, 755 (182 SE2d 895) (1971); *Register v. Kandlbinder*, 132 Ga. App. 435, 435 (208 SE2d 565) (1974); *Spell v. State*, 120 Ga. App. 398, 399 (170 SE2d 701) (1969).

In 1984, the language of what is now OCGA § 5-6-34 (a) (1) was changed slightly, replacing the word "cause" with "case." See Ga. L. 1984, p. 599, § 1. But no decision has suggested that this change materially altered the statute's meaning as to what constitutes a final judgment. Rather, construing that current language, which applies here, we have held that when a defendant is prosecuted on a multiple-count indictment, the case is not final and appealable until the trial court enters a written judgment on each count of the indictment. See *Keller v. State*, 275 Ga. 680, 681 (571 SE2d 806) (2002); see also *State v. Riggs*, 301 Ga. 63, 65 (1) (799 SE2d 770) (2017) ("When a trial court fails to impose separate sentences for

8

each count of which a defendant was found guilty, it has not entered a proper judgment." (citing *Keller*)). Similarly, in construing former OCGA § 5-7-2, which outlined the procedures the State must follow to appeal when there is no final order or judgment, we concluded that a trial court's order dismissing one count of a two-count indictment was not a final order where the other count was pending below. See *State v. Outen*, 289 Ga. 579, 581 (714 SE2d 581) (2011) (holding that the State's appeal should have been dismissed because it did not follow the interlocutory procedures provided by former OCGA § 5-7-2).

Seals argues that *Keller* applies only when a trial court fails to enter a disposition on a count for which the jury reached a verdict, and argues that *Keller* does not apply because the jury in this case did not reach a verdict on the rape count. But there is no principled reason for that factual distinction to make a legal difference. *Keller* and *Outen* demonstrate that when at least one count of a multi-count indictment remains pending below, no count may be appealed as a final judgment. This principle applies equally to civil cases. See,

9

e.g., *Islamkhan v. Khan*, 299 Ga. 548, 550 (1) (787 SE2d 731) (2016) (divorce decree was interlocutory order, not a final judgment, when order reserved issue of attorney fees that was expressly asked for in pleadings); *Keck v. Harris*, 277 Ga. 667, 667 (1) (594 SE2d 367) (2004) (trial court's order denying constitutional challenge did not constitute a final judgment under OCGA § 5-6-34 (a) (1) because a claim remained pending below); see also *Tyrones v. Tyrones*, 300 Ga. 367, 369 n.2 (792 SE2d 398) (2016) ("[An order] constitutes a final judgment within the meaning of OCGA § 5-6-34 (a) (1) where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court." (citation and punctuation omitted)). Our precedent thus clearly provides that a case is pending below when one or more counts of a multi-count complaint or indictment have not been resolved.

This precedent is consistent with the ordinary public meanings of "case" and "pending" as they relate to legal proceedings. The most natural ordinary meaning of "case" is a single proceeding, regardless

of whether the proceeding involves one or multiple counts. See Webster's New World Dictionary of the American Language 219 (2d College ed. 1980) (relevant definition of "case" is "a legal action or suit"); see also Black's Law Dictionary 215 (6th ed. 1990) (first definition of "case" is "[a] general term for an action, cause, suit, or controversy, at law or in equity"). Indeed, virtually every criminal case that this Court and the Court of Appeals considers involves multiple counts against the defendant. But in those instances, no one refers to the underlying proceeding (or the appeal) as "cases." It's simply a "case." These same conventions generally are used in the trial courts.

Similarly, when a count has not been resolved, we think of that count as "pending." See Webster's New World Dictionary of the American Language 1050 (2d College ed. 1980) (defining "pending" as "not decided, determined, or established"); see also Black's Law Dictionary 1134 (6th ed. 1990) (providing set of definitions for "pending" that includes: "Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled;

11

undetermined; in the process of settlement or adjustment. Awaiting an occurrence or conclusion of action, period of continuance or indeterminacy. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment."). And because a criminal case often includes multiple counts, one would ordinarily not consider a case to be resolved fully if one count is pending; instead, the entire case would be treated as pending, even if some counts were resolved.

Under the ordinary meaning of OCGA § 5-6-34 (a) (1) and given our established principles, there is but one case here: Seals was tried under one indictment charging two counts. As we will next explain, the State's arguments that the mistried and dead-docketed count is essentially now a different case are not persuasive.

(b) *The authority cited by the parties does not inform the meaning of OCGA § 5-6-34 (a) (1).*

Longstanding precedent provides that declaring a mistrial does not finally dispose of a case. See *Oliveros v. State*, 118 Ga. 776, 779 (45 SE 596) (1903); see also *Nickles v. State*, 86 Ga. App. 284, 284 (1) (71 SE2d 574) (1952) (citing *Oliveros* and *Starnes v. State*, 138 Ga.

341 (75 SE 104) (1912)). Despite this precedent, Seals and the State argue that the mistrial in this case effectively severed the mistried rape count from the child molestation count on which Seals was found guilty. But their points are misplaced.

Citing a footnote in *Keller,* Seals argues that the situation here is like the multiple trials of severed counts such that the conviction on the child molestation count was separately appealable. See *Keller*, 275 Ga. at 681 n.3 (noting case law holding that when a count is severed from a multi-count indictment, and separate trials are held on the severed counts, each conviction on the severed counts is separately appealable when the sentence is entered on the severed count). But this is not a situation in which there were multiple trials held on severed counts. There was only one trial on one indictment.

For its part, the State relies on precedent from the United States Supreme Court to argue that a single indictment involving multiple counts is really multiple indictments that have been joined together, such that the indictments are severed from each other when there is a verdict and sentence entered on at least one count.

13

The State also cites several Georgia cases in which an appeal was decided notwithstanding the fact that some of the counts in the indictment remained pending below. But the State's authority has no precedential value for determining the meaning of OCGA § 5-6-34 (a) (1) or its application here.

The State's reliance on *Pointer v. United States*, 151 U.S. 396 (14 SCt 410, 38 LE 208) (1894), is misplaced because the relevant portion of that case merely concerned whether the trial court erred in denying a motion to quash the indictment where it charged two different murders. See id. at 400. After noting the common law preference for an indictment charging only a single count, the Court concluded that joinder of different felonies in separate counts was not "necessarily fatal to the indictment" and that a trial court's decision to permit that action was a matter of "prudence and discretion." Id. at 401-403. Nothing about *Pointer*'s discussion regarding the joinder and severance of offenses is relevant to our consideration here.

The State also relies on *Selvester v. United States*, 170 U.S. 262 (18 SCt 580, 42 LE 1029) (1898), to argue that a jury's inability to reach a verdict on every count of a multi-count indictment has no effect on the counts that were decided. But *Selvester* does not touch on the issue here. In *Selvester*, the defendant claimed the jury's verdict was a nullity where the jury found that he was guilty on three counts of the indictment and could not agree on the fourth count. See id. at 263. The defendant in that case asserted that "where an indictment consists of several counts, repeated trials must be had until there is an agreement either for acquittal or conviction as to each and every count contained in the indictment." Id. at 264. The United States Supreme Court concluded that the jury's inability to reach a verdict on one count did not render the verdict a nullity because "although distinct offen[s]es were charged in separate counts in one indictment, they nevertheless retained their separate character to such an extent that error or failure as to one had no essential influence upon the other." Id. at 268.

This conclusion has no bearing here, because this is not a case about whether the jury must reach an agreement on all counts in order for the verdict on the counts decided to be valid. The question before us is whether there is a final judgment under OCGA § 5-6-34 (a) (1) when one or more counts of a multi-count indictment have been mistried and dead-docketed. *Selvester* did not purport to address, much less answer, this question. Nor could a decision of that Court decide the meaning of a Georgia statute. See *Riley v. Kennedy*, 553 U.S. 406, 425 (128 SCt 1970, 170 LE2d 837) (2008) ("A State's highest court is unquestionably the ultimate expositor of state law." (citation and punctuation omitted)).

Moreover, the State ignores the more relevant and persuasive precedent from that Court regarding what constitutes a final judgment. That precedent aligns with our construction of what constitutes a final judgment under state law. See *Collins v. Miller*, 252 U.S. 364, 370 (40 SCt 347, 64 LE 616) (1920) ("To be appealable the judgment must be not only final, but complete[,]" which requires that the judgment be "final not only as to all the parties, but as to

16

the whole subject-matter and as to all the causes of action involved." (citations omitted)).

The State (like the dissent) also points to several cases from this Court and the Court of Appeals that have considered the merits of an appeal despite a count remaining pending below. But in none of those cases was there any discussion of jurisdiction at all, much less analysis and a holding on the issue. Decisions of this Court and of the Court of Appeals "do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion," and "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007) (citation and punctuation omitted). Those cases provide no authority for the State's position.

3. *There is no legal authority for treating cases with dead-docketed counts differently.*

Declaring a mistrial on the rape count meant the case was not final under our precedent, and placing that count on the dead docket

17

did not change the status of the case. The parties generally refer to the trial court's discretion to dead docket cases, but no such authority (which, whatever its origin, is not statutory) creates a special category for which the general finality rule of OCGA § 5-6-34 (a) (1) does not apply, because a dead-docketed count remains untried, see *Zorn*, 71 Ga. at 82 (there is no final judgment where "issues remain untried" in the court below), and remains to be resolved, see *Tyrones*, 300 Ga. at 369 n.2 (an order constitutes a final judgment when it leaves no issues remaining to be resolved).

(a)*None of the few statutory references to dead-docketing supports different treatment.*

Placing cases on the dead docket is a procedural tool by which "the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court." *Beam v. State*, 265 Ga. 853, 855 (3) n.3 (463 SE2d 347) (1995) (citation and punctuation omitted). This practice, while common, is mentioned only in passing in the Georgia Code. And what scant statutory authority does exist on the subject — three references — offers nothing to demonstrate that the

18

effect of dead-docketing a count results in a final judgment on that count and thus on the case under OCGA § 5-6-34 (a) (1).

The first statute merely describes a superior court clerk's duty to maintain a criminal case management system that will reflect "entries of cases which are ordered dead docketed." OCGA § 15-6-61 (a) (4) (B). The second statute relates to occasions when a surety's principal will be considered surrendered or released. See OCGA § 17-6-31 (c), (d) (1). And the final statute concerns a defendant's ability to restrict access to his criminal history record. See OCGA § 35-3-37 (j) (3). This statute allows criminal history to be restricted for a dead-docketed charge only when (1) the charge has remained on the dead docket for more than 12 months, (2) the charged individual petitions the court to restrict access and the court hears evidence and determines whether restriction is appropriate and why the count was dead-docketed, and (3) there is no active warrant pending for the individual. See id.

Nothing about these statutes reveals that a dead-docketed count is to be treated as a final disposition. Indeed, the treatment of

19

dead-docketed counts under OCGA § 35-3-37 (j) (3) — waiting 12 months after dead-docketing and examining the reasons for the dead-docketing — acknowledges that merely dead-docketing a count does not necessarily constitute a final disposition.

(b)*Extensive Georgia case law treats dead-docketed counts as pending below.*

The term "dead-docketed" is really a misnomer; it refers to a procedural, administrative device, not to the termination of a matter. As mentioned above, a dead-docketed count may be reinstated to the active docket any time at the trial court's direction. Inactive and final are not the same thing. As this Court explained before, placing a count or counts on the dead docket "certainly constitute[s] neither a dismissal nor a termination of the prosecution in the accused's favor. *A case is still pending* which can be called for trial at the judge's pleasure, or upon which the accused can make a demand for trial." *Phillips v. State*, 279 Ga. 704, 705 (1) (620 SE2d 367) (2005) (punctuation omitted; emphasis added) (quoting *Beam*, 265 Ga. at 855 (3) n.3) (relying on this principle to

20

hold that a defendant was not entitled to any special notice when his case was removed from the dead-docket for retrial). Because the trial court can return a dead-docketed count to the active docket at any point, such a count remains pending. See *Courtenay v. Randolph*, 125 Ga. App. 581, 582 (2) (188 SE2d 396) (1972) ("Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor. A case is still pending which can be called for trial at the judge's pleasure, or upon which the accused can make a demand for trial."); *Wilson v. State*, 240 Ga. App. 681, 681 (523 SE2d 613) (1999); Ben W. Studdard, Ga. Crim. Trial Practice § 18.19 (2020-2021 ed.) ("A case is still pending, even though on the dead docket, and the defendant can make a demand for trial."). In the context of malicious prosecution and malicious arrest cases, which require as an element that the prosecution has been terminated in the plaintiff's favor, our courts have held that element was not yet satisfied when the arrest warrant or indictment was placed on a dead docket, because the underlying criminal action remained pending. See *Watkins v.*

21

*Laser/Print-Atlanta*, 183 Ga. App. 172, 172-173 (1) (358 SE2d 477) (1987); *McCord v. Jones*, 168 Ga. App. 891, 892-893 (311 SE2d 209) (1983); *Webster v. City of East Point*, 164 Ga. App. 605, 609 (3) (294 SE2d 588) (1982). All of these authorities squarely articulate the principle that a dead-docketed count has not been finally decided until it has been dismissed, nolle prossed, or resulted in a judgment by a guilty plea or trial.

Regardless of the practical necessities a trial court may have for placing a count on the dead-docket, those reasons do not change the plain meaning of a statute governing when an appeal may be pursued. The language of OCGA § 5-6-34 (a) (1) does not provide that there is a final judgment when "the case is not active below"; it provides instead that there is a final judgment when the "case is no longer pending below." We do not have the power to ignore the meaning of words, nor do we have the power to rewrite statutes to better suit the perceived needs of courts or parties. See *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006); see also *Duke v. State*, 306 Ga. 171, 174-187 (2), (3) (829 SE2d 348) (2019) (overruling

22

a decision in which this Court purported to create a judicial exception to the statutory requirements for bringing an interlocutory appeal under OCGA § 5-6-34 (b), even though those requirements may sometimes interfere with "the interests of judicial economy").

When the legislature enacted the current version of OCGA § 5-6-34 (a) (1) in 1984, it did so against the backdrop of cases like *Courtenay*, *McCord*, and *Webster*, which held that the dead-docketing of a case does not terminate the case. That context informs the meaning of "when the case is no longer pending . . . below." The plain meaning of that phrase, bolstered by decades of precedent, makes clear that when a count is dead-docketed, it remains pending below even if it is not being actively litigated. And our precedent unequivocally holds that when a count is pending below, so is the case of which that count is a part. Because the case remained pending below, the Court of Appeals was correct to dismiss the appeal because it was not from a final judgment under OCGA § 5-6-34 (a) (1).

The dissent thinks our conclusion — one reached through ordinary application of long-standing principles of statutory construction — is wrong. But the dissent reaches the opposite view without articulating or applying any principles of statutory construction. Indeed, while agreeing that the meaning of "pending" is central to this case, the dissent at no point explains what it thinks "pending" means, much less cites even a single legal authority for such a meaning. Instead, the dissent turns its focus to whether a case is no longer "active." But "active" is not a word that appears in OCGA § 5-6-34 (a) (1), relevant Georgia precedent, or any of the definitions we have identified, and the dissent does not explain why "active" is a word that has any legal relevance to the question before us today. We readily acknowledge that a dead-docketed count is not active during its time on the dead docket, but we are aware of no legal authority of any kind that determines whether a case is "pending" based on whether that case has a presently "active" count. Dockets in many criminal cases are "inactive" for months at a time, but that does not mean that the cases are no longer "pending" in the

24

trial court and can be immediately appealed during those dead periods. The dissent also places emphasis on the word "dead," but that word is also not in the statute and, as we have shown, a dead-docketed count is not really dead, merely inactive.[3]

Moreover, as mentioned above, longstanding precedent from the Court of Appeals (which, although not binding on us, has never been overruled and has been the law of Georgia for some time) bars malicious prosecution and malicious arrest lawsuits predicated on dead-docketed counts precisely because those counts remain undecided. The dissent's view would uproot this settled law and our own decision in *Phillips*, but it does not engage in an analysis of why those decisions should be abandoned. As we explain below, we share some (but not all) of the dissent's concerns about the practical implications of our decision today. But the judicial power the Georgia Constitution vests in us does not include the power to

---

[3] Or, as Miracle Max might say, only "mostly dead." See The Princess Bride (20th Century Fox 1987) ("There's a big difference between mostly dead and all dead. Mostly dead is slightly alive.").

25

rewrite statutes in ways we believe would achieve better outcomes; that power is vested solely in the General Assembly.

4. *The General Assembly may wish to amend OCGA § 5-6-34 (a) to authorize appeals in this situation.*

The dissent's and the parties' agreement that Seals's appeal should be heard now does not empower us to create jurisdiction where it is not authorized by statute and is thus lacking. See *Veasley v. State*, 272 Ga. 837, 839 (537 SE2d 42) (2000). But the dissent does raise legitimate policy concerns that the General Assembly should consider in deciding whether to amend OCGA § 5-6-34 (a) to allow for immediate appeals in cases where the only non-resolved counts are dead-docketed.[4]

Allowing an immediate appeal in a case like Seals's could expedite resolution, without first requiring either (1) the trial court to dismiss or nolle pros a count charging a serious crime without

---

[4] We note in this regard that OCGA § 5-6-34 (a) has been amended over the years to include other situations (none applicable here) in which immediate appeals are authorized despite the case not being final. See id. (a) (2)-(13). OCGA § 5-7-2 also has been amended to authorize the State to take immediate appeals of certain cases that would otherwise require a certificate of immediate review. See id. (b), (c).

certainty that the defendant will end up serving a significant sentence on other counts, or (2) a retrial that might not result in any additional time being served, even if a guilty verdict is returned, depending on how the trial court handles sentencing and the result on appeal.[5] And, although we are confident that the trial judges and prosecutors of this State would conduct themselves appropriately, the potential for abuse of a system that allows a dead-docketed count to postpone an appeal indefinitely does pose a troubling prospect.[6]

But any constitutional claims that might arise from such abuse would be as-applied, are not present here where Seals never requested a certificate of immediate review, and offer no basis for a thumb on the scale of the interpretive question before us today.[7] And

---

[5] Legislation to allow immediate appeals in cases like this one might well be able to be crafted in a more targeted manner than the dissent's interpretation of the existing statute; that interpretation, which necessarily applies to all cases with dead-docketed counts, might well force more unwanted piecemeal appeals than a more targeted legislative rewrite could achieve.

[6] A conviction that is not a final judgment is, of course, appealable if a certificate of immediate review is sought timely and granted by the trial court. See OCGA § 5-6-34 (b). But the denial of a certificate is unreviewable. See *Duke*, 306 Ga. at 179 (3) (a).

[7] We also note that the Court of Appeals has held that it is an abuse of discretion to dead-docket a criminal count over the objection of the defendant. See *Newman v. State*, 121 Ga. App. 692, 694 (3) (175 SE2d 144) (1970).

other concerns the dissent articulates are less well-founded. In particular, we do not share the dissent's concern that certificates of immediate review would not be available due to the requirement that they be sought within ten days after the order sought to be appealed. The dissent points out correctly that transcripts almost always take longer than ten days to complete. But that poses a problem only in the unlikely event that an appeal is sought directly from the conviction and sentence. Under existing practice, the far better course is to file and litigate a motion for new trial (during which the transcripts will be completed), and only then seek a certificate of immediate review in the event that the motion for new trial is denied. Nothing about this opinion's construction of the statutory terms "case" and "pending" affects the ability of a defendant to file a motion for new trial as to a count on which he or she has been convicted; the motion for new trial statute uses completely different language that allows the filing of such a motion. See OCGA § 5-5-40 (a) ("All motions for new trial, except in extraordinary cases, shall be made within 30 days of the entry of the

28

judgment on the verdict or entry of the judgment where the case was tried without a jury.").[8]

In any event, generalized concerns about potential abuse of statutory language are for the General Assembly to address. When Georgia law is clear — and here it is — our task is merely to apply it. As the United States Supreme Court recently observed, a "[c]ourt's task is to discern and apply the law's plain meaning as faithfully as we can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief.'" *BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. \_\_\_, \_\_ (141 SCt 1531, 209 LE2d 631) (2021) (quoting *Lewis v. City of Chicago*, 560 U.S. 205, 217 (130 SCt 2191, 176 LE2d 967) (2010)).

*Judgment affirmed. All the Justices concur, except Melton, C. J., and LaGrua, J., who dissent.*

---

[8] It is also possible that in circumstances like Seals's, a trial court might sever the mistried count to allow the immediate appeal of the counts on which a judgment was entered. See OCGA § 16-1-7 (c) ("When two or more crimes are charged as required by subsection (b) of this Code section, the court in the interest of justice may order that one or more of such charges be tried separately."); *Dingler v. State*, 233 Ga. 462, 463-464 (211 SE2d 752) (1975) (adopting ABA's standard on severance of charges).

LAGRUA, Justice, dissenting.

The majority's conclusion that "dead" means "pending" is illogical. Once a count is moved to the dead docket, the count is *dead*. I have grave concerns about the majority's opinion in this case, and thus, I must respectfully dissent.

1. OCGA § 5-6-34 (a) identifies the categories of trial court judgments that are directly appealable to this Court or the Court of Appeals. Seals directly appealed his child molestation conviction to the Court of Appeals as a "final judgment" under OCGA § 5-6-34 (a) (1), which defines "final judgments" as those "where the case is no longer pending in the court below." Id. Given this definition, what it means to be "pending" is central to our analysis of whether Seals's child molestation conviction — which was irrefutably resolved and disposed of below — could be directly appealed after his rape count was placed on the dead docket. The majority erroneously concludes that the dead-docketed count is still pending, and a direct appeal cannot be had. I conclude otherwise.

30

The Georgia Code does not define "pending" in the context of OCGA § 5-6-34 (a) (1) or otherwise, presumably because the meaning is clear. And, significantly, as will be explained further in this dissent, the dead-docketing procedure is not a creature of any statute, but was born out of necessity and convenience in the trial courts to effectively and efficiently address criminal charges that would *otherwise* remain pending against a criminal defendant or would appear on the trial court's active criminal docket. This procedural tool, acknowledged by the majority to be "a common and longstanding practice in Georgia courts," can be requested by the State, by the defendant, or at the recommendation of the trial court to resolve and close a case or certain counts of an indictment (hereinafter "case/count") until it can be tried or retried, if ever. (Maj. Op. at 739.) The dead-docketing procedure will generally commence before trial or following a mistrial, but requires a motion by one of the parties and an affirmative act by the trial court; an order placing a case/count upon the dead docket (or denying the motion) will follow. At the conclusion of this process, the case/count

31

at issue is removed from the court's active docket and placed on the dead docket.

2. Before our consideration of this granted certiorari, the majority of cases addressing the dead docket procedure originated from our Court of Appeals and the Eleventh Circuit Court of Appeals, neither of which are binding on this Court.[9] See, e.g., *Howard v. Warden*, 776 F3d 772 (11th Cir. 2015); *State v. Creel*, 216 Ga. App. 394, 394-395 (454 SE2d 804) (1995); *State v. Marcus*, 206 Ga. App. 385 (425 SE2d 351) (1992); *McCord v. State*, 168 Ga. App. 891 (311 SE2d 209) (1983); *Courtenay v. Randolph*, 125 Ga. App. 581 (188 SE2d 396) (1972); *Newman v. State*, 121 Ga. App. 692 (175 SE2d 144) (1970). And, in these cases, the Court made no effort to reconcile the idea that something could be "dead" with the notion

---

[9] Only two cases from our Court have explicitly addressed the use of the dead docket. See, e.g., *Phillips v. State*, 279 Ga. 704, 705 (1) (620 SE2d 367) (2005); *Beam v. State*, 265 Ga. 853, 855, n.3 (463 SE2d 347) (1995). The *Beam* case explained the dead-docketing procedure in reliance upon opinions from the Court of Appeals. *Beam*, 265 Ga. at 855, n.3. *Phillips* relied on the dead-docketing language from *Beam* and simply addressed whether a defendant received sufficient notice for due process purposes that his case was being removed from the dead docket for a retrial of certain of his charges. *Phillips*, 279 Ga. at 705.

that it could somehow simultaneously be "pending," as well. See *Courtenay*, 125 Ga. App. at 583. In addition, while the Court determined that "statutory authority for [the] criminal dead dockets is contained in" OCGA § 15-6-61 (a) (4) (B) (formerly Ga. Code Ann. § 24-2714 (5), (7)), this is misleading. *Creel*, 216 Ga. App. at 395. See also *Newman*, 121 Ga. App. at 694.

The dead docket was an existing administrative procedure used by trial courts when it was incorporated by the legislature into OCGA § 15-6-61 (a) (4) (B) and prior versions of this statute. After trial courts' long implementation of this procedural device, the maintenance of the dead docket was included by statute among the duties of a clerk of superior court.[10] See OCGA § 15-6-61 (a) (4) (B). Under OCGA § 15-6-61 (a) (4) (B), the clerk of superior court has a duty to maintain an automated criminal case management system, which shall contain: (1) a summary record of all criminal

---

[10] As discussed in the majority opinion, the dead docket is also referenced in OCGA § 17-6-31 (c), (d) (1) in relation to when a surety's principal will be considered surrendered or released, as well as in OCGA § 35-3-37 (j) (3), which addresses a criminal defendant's ability to restrict access to his or her criminal history record.

indictments in which true bills are rendered; (2) all criminal accusations that have been filed in the office of the clerk of superior court; and (3) entries of other matters of a criminal nature filed with the clerk, including quasi-civil proceedings and entries of cases which are ordered dead-docketed.

The Court of Appeals' conclusion in *Newman* and its progeny (and of this Court in reliance thereon) that a dead-docketed count is a pending count defies reason. As a practical and procedural matter, when a case/count is moved to the dead docket, it has simultaneously been *removed* from the active docket. See *Marcus*, 206 Ga. App. at 385 ("Following the arrest of defendant, the case was removed from the dead docket and returned to active status."). See also *Howard*, 776 F3d at 775-776 (holding that because the trial court moved the defendant's indictment to the Georgia "dead docket," "[b]y definition, the indictment is not active, see OCGA § 15-6-61 (a) (4) (B), and imposes no present restraints on [the defendant's] liberty" (emphasis omitted)). At this juncture, the case/count is not active or pending; it is, by its very description, *dead*

34

and remains so unless or until it is returned to the *active* docket. See OCGA § 15-6-61 (a) (4) (B). See also *Howard*, 776 F3d at 775-776. Additionally, although this Court and the Court of Appeals maintain that a dead-docketed case/count is a "pending" case/count, *Newman* and its progeny also acknowledge that a dead-docketed case/count merely "*can* be called for trial at the judge's pleasure" and "*may* be reinstated." *Creel*, 216 Ga. App. at 395 (emphasis supplied). These are terms of possibility, not certainty. While a dead-docketed case/count may conceivably become alive and active again, albeit only through the affirmative act of moving it *off* the dead docket and returning it to the active docket, the case/count may just as conceivably remain dead and inactive. And, this uncertain and indefinite outcome should not affect our analysis here. Here, in the moment that Seals filed a direct appeal of his child molestation conviction, his rape count was dead.

3. This conclusion comports with how a dead-docketed case/count has been consistently treated in our trial courts, where the procedure was first adopted and continues to be utilized. And,

35

to conclude otherwise would render the dead docket meaningless, raise serious due process concerns, and potentially thwart appellate review until an indeterminate or even non-existent time. Interlocutory appellate review requires both trial court and appellate court approval, and thus, a convicted defendant is not guaranteed an appeal. See OCGA § 5-6-34 (b) (interlocutory appeal may be obtained only after the trial court certifies that its judgment "is of such importance to the case that immediate review should be had," and, if such certification is made, the appellate court has "discretion[ ]" to permit an appeal). Likewise, habeas review cannot be sought until the judgment is final and all appeals have been exhausted. See OCGA § 9-14-42 (c).

Under our current ruling, whenever a criminal trial results in a conviction on one or more counts and a mistrial on others, the defendant cannot directly appeal his conviction — even when a written disposition has been filed of record — if the defendant's mistried counts are placed on the dead docket. Instead, in these circumstances, which are common, the defendant must ask the trial

court for a certificate of immediate review within just ten days of the entry of the judgment of conviction. See OCGA § 5-6-34 (b). But, even if the defendant timely seeks this certificate, he is not assured a right to appeal. The trial court must then determine that the judgment is "of such importance to the case that immediate review should be had[.]" Id. And, if the trial court makes this finding and grants the certificate, the defendant will still be required to file a petition in our Court or the Court of Appeals within another ten days, setting forth "the need for such an appeal and the issue or issues involved therein." Id. This Court or the Court of Appeals must then conclude, in our "respective discretions," that an issue of such importance exists. Id.

I fear that our trial and appellate courts will not view a defendant's request for immediate review of his conviction, where he also has a dead-docketed count, as a matter of such importance that immediate review must be had. And, even if they do, the time period for seeking and filing an interlocutory appeal in this context is unrealistic given that the defendant has a constitutional right to

37

retain or be appointed conflict-free appellate counsel to represent him during the appeal, which can be a lengthy process. See *Williams v. Moody*, 287 Ga. 665, 667 (2) (697 SE2d 199) (2010) ("[A] convicted defendant is entitled to effective assistance of counsel on direct appeal," and "[w]here a constitutional right to counsel exists, the Sixth Amendment to the United States Constitution requires that counsel's representation be free from conflicts of interest[;] [t]hus, a convicted defendant is entitled to appellate representation by conflict-free counsel as a matter of constitutional law."). See also *Rowland v. State*, 264 Ga. 872, 874-875 (2) (452 SE2d 756) (1995) ("[A]s a matter of state and federal constitutional law, a criminal defendant is entitled to effective assistance of counsel in pursuing his appeal of right."). Additionally, OCGA § 5-6-34 (b) allows the party seeking an interlocutory appeal to include parts of the record with the petition, but trial transcripts and records of exhibits can take months to prepare and file into the record. As such, the record would not be readily available to the petitioner in pursuing an interlocutory appeal.

While I recognize that "Georgia law is well settled that the right to appeal is not constitutional, but instead depends on statutory authority," Georgia has created a statutory right to a direct appeal following entry of a final judgment of conviction. *Duke v. State*, 306 Ga. 171, 172 (1) (829 SE2d 348) (2019) (citation and punctuation omitted). See also OCGA § 5-6-34 (a) (1). To preclude a defendant from immediately attacking his conviction on appeal would hinder his due process rights, especially considering that "this Court has held that it will not review the discretion vested in the trial court in granting or refusing a certificate for immediate review of interlocutory rulings." *Duke*, 306 Ga. at 179 (citation and punctuation omitted). By construing the word "pending" in OCGA § 5-6-34 (a) (1) to include charges that are dead and inactive, the majority has interpreted the statute in a manner that obtains absurd results, which this Court should not countenance and which the legislature could not have intended. See, e.g., *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004) ("The judiciary has the duty to reject a construction of a statute which will result in

39

unreasonable consequences or absurd results not contemplated by the legislature.") (citations and punctuation omitted).

4. "It is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." *Veasley v. State*, 272 Ga. 837, 838 (537 SE2d 42) (2000) (citation and punctuation omitted). And, in applying this principle, the majority opinion notes that "we have often dismissed for lack of jurisdiction appeals in criminal cases because verdicts have been rendered or sentences have been imposed on less than all counts of an indictment or accusation." (Maj. Op. at 739.) However, we have also routinely considered direct appeals of convictions where, as here, other counts of the indictment were dead-docketed at the time of the appeal. See, e.g., *Pender v. State*, 311 Ga. 98, 98, n.1 (856 SE2d 302) (2021) (following trial, the jury found the appellant guilty on seven counts of the indictment, but was unable to reach a verdict on two of the counts, which were placed on the dead docket; a direct appeal followed); *Terrell v. State*, 304 Ga. 183, 183, n.1 (815 SE2d 66) (2018) (prior to trial, six of the

40

fourteen counts of the indictment were dead-docketed; the appellant then stood trial on the remaining counts; the jury found him guilty on all counts; and appellant filed a direct appeal); *Faust v. State*, 302 Ga. 211, 211, n.1 (805 SE2d 826) (2017) (following a mistrial, two counts of the indictment were placed on the dead docket; after which the appellant was retried on the remaining counts, convicted on these counts, and filed a direct appeal); *Walker v. State*, 295 Ga. 688, 688, n.1 (763 SE2d 704) (2014) (prior to trial, one count of the indictment was dead-docketed, and the appellant was then tried and convicted on the remaining counts, followed by a direct appeal); *Jones v. State*, 284 Ga. 672, 672, n.1 (670 SE2d 790) (2008) (following trial, the jury found appellant guilty on several counts, not guilty on one count, and failed to reach a verdict on the final count, which was then placed on the dead docket; a direct appeal followed); *Taylor v. State*, 282 Ga. 44, 44, n.1 (644 SE2d 850) (2007) (following trial, the appellant was convicted on all counts, except for one, which was placed on the dead docket, and appellant timely filed a direct appeal); *Thomas v. State*, 279 Ga. 363, 363, n.1 (613 SE2d 620)

41

(2005) (one count of the indictment was dead-docketed, and the appellant was then tried, convicted, and sentenced on the remaining counts; a direct appeal followed); *Grier v. State*, 273 Ga. 363, 363, n.1 (541 SE2d 369) (2001) (prior to trial, the final count of the indictment was dead-docketed, and the appellant was then tried and found guilty of the remaining counts; after sentencing, appellant timely filed a direct appeal).

The majority opinion holds that these cases provide no authority for our consideration of a case in *this* posture because

> [i]n none of those cases was there any discussion of jurisdiction at all, much less analysis and a holding on the issue. Decisions of this Court and of the Court of Appeals do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

(Citation and punctuation omitted.) (Maj. Op. at 745.)

However, I am not relying on these cases for their authority. I cite these cases to demonstrate that we have rightly considered direct appeals of cases in this posture for more than 20 years (and

42

possibly longer given that the cases noted above are not an exhaustive account).

5. I conclude that the dead-docketing of Seals's rape charge and the denial of his motion for new trial on the child molestation conviction left no part of his case pending below, and he was authorized to directly appeal his conviction to the Court of Appeals under OCGA § 5-6-34 (a) (1).

Noting that my view is not the prevailing one, I strongly urge our legislature to take affirmative steps to change the language of OCGA § 5-6-34 (a) to authorize a direct appeal by a criminal defendant of a case in this posture. To leave the statute unchanged, especially in light of our majority opinion, will upend years of trial court practice where the dead docket procedure has been utilized for a myriad of practical, strategic, and economic reasons and will leave defendants without a meaningful and effectual method to appeal their convictions.

I am authorized to state that Chief Justice Melton joins in this dissent.

Decided June 18, 2021.

Certiorari to the Court of Appeals of Georgia.

*Lawrence W. Daniel; James K. Luttrell*, for appellant.

*Ryan R. Leonard, District Attorney, Sarah E. Hillern, Elizabeth D. Racine, Sean A. Garrett, Assistant District Attorneys*, for appellee.