S16A0654. WALLACE v. THE STATE.
(791 SE2d 836)

BLACKWELL, Justice.

Deron Michael Wallace was tried by a Lowndes County jury, and he was convicted of murder, armed robbery, two counts of theft by taking, and unlawful possession of a firearm during the commission of a felony, all in connection with the fatal shooting of Robert Pett. Wallace appeals, contending only that the trial court erred when it rejected his claim of selective prosecution, which is based on the determination of the prosecuting attorney to prosecute one of Wallace's accomplices for crimes less serious than murder. We find no merit in the claim of selective prosecution, but we note that the trial court erred at sentencing when it failed to merge the thefts with the armed robbery. Accordingly, we vacate the convictions and sentences for theft by taking, but we otherwise affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Wallace and Michael Pindling were longtime friends, and in the summer of 2013, they moved from New York to Valdosta. On July 2, Wallace and Pindling went to a sporting goods store near Valdosta to buy ammunition, and there, they met Pett and learned that he was a marijuana dealer. Five days later, Wallace and Pindling started working as "dishboys" at a Valdosta restaurant, where they met Kathryn Cortez, who worked at the restaurant as a waitress.

---

[1] Pett was killed on July 13, 2013. Two-and-a-half months later, a grand jury indicted Wallace, Michael Pindling, and Kathryn Cortez for crimes in connection with the killing. Wallace and Pindling were charged with malice murder, felony murder, aggravated assault, armed robbery, two counts of theft by taking, and the unlawful possession of a firearm during the commission of a felony. Cortez was charged with armed robbery and unlawful possession. Cortez pleaded guilty to armed robbery (the State dismissed the unlawful possession charge against her), and she testified at trial as a witness for the prosecution against Wallace and Pindling. Their trial began on May 7, 2014, and the jury returned its verdict the next day, finding Pindling guilty on all counts, and finding Wallace guilty on all counts except malice murder. On June 27, 2014, Wallace was sentenced to imprisonment for life for felony murder, a concurrent term of imprisonment for life for armed robbery, a concurrent term of imprisonment for ten years on one count of theft by taking, a concurrent term of imprisonment for one year on the other count of theft by taking, and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The trial court correctly merged the aggravated assault with the felony murder. See *Dyal v. State*, 297 Ga. 184, 185 (1) (773 SE2d 249) (2015). Wallace timely filed a motion for new trial on July 24, 2014, and he amended it on June 9, 2015. The trial court denied his motion on July 15, 2015, and Wallace timely filed a notice of appeal on July 24, 2015. His appeal was docketed in this Court for the April 2016 term, and it was orally argued on April 26, 2016.

Within days, Wallace and Cortez entered into a sexual relationship, and along with Pindling, they started to plan a trip to New York, where they would stay with Wallace's mother. On July 12, they rented a car for their trip to New York, and they spent that night in the home in which Wallace and Pindling had been staying since they arrived in Georgia.

The next morning, Wallace, Pindling, and Cortez were fired by the restaurant, and they realized that they did not have enough money to fund their excursion to New York. It occurred to Wallace and Pindling that they could secure the necessary funds by committing a robbery, and Wallace suggested that they rob Pett. They made plans to do so, and although she had known Wallace and Pindling for only a week, Cortez agreed to help.

On the afternoon of July 13, Wallace arranged a meeting with Pett, ostensibly for the purpose of a marijuana transaction. Wallace placed eight calls to Pett, and he sent text messages to Pett about a location for the transaction, proposing an abandoned house in Valdosta. Cortez also spoke with Pett and attempted to lure him to the house. Wallace, Pindling, and Cortez then proceeded to the house. When Pett arrived, he met Cortez and Wallace on the front porch, where he sold marijuana to Cortez. Pindling was waiting inside the house, and when the marijuana sale was complete, Pindling came onto the porch and shot Pett in the back. Wallace took a backpack from Pett, which contained a gun and approximately $200 in cash. Wallace, Pindling, and Cortez then left for New York.

Pett died of the gunshot wound to his back. Investigators used phone records to identify Wallace as a suspect, and they learned that Wallace recently had rented a car. Law enforcement used GPS technology to track the rental car, and when Wallace, Pindling, and Cortez returned to Georgia, they were arrested. Inside the rental car, investigators found a black ski mask, as well as passports and other identification cards for Wallace and Pindling.

(a) Wallace does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, it is the practice of this Court in murder cases to review the evidence for legal sufficiency, even when the defendant does not complain about it. We have done so in this case, and we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Wallace was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (b) (criminal liability of parties to a crime); *Powell v. State*, 291 Ga. 743, 744 (1) (733 SE2d 294) (2012) (same).

(b) Although Wallace does not enumerate it as an error, we note that the trial court erred when it convicted Wallace of two thefts by taking and sentenced him for those crimes. See *Hulett v. State*, 296 Ga. 49 (2) (766 SE2d 1) (2014). The two thefts involved the taking of the gun and the currency inside Pett's backpack. Wallace was separately convicted, however, of armed robbery for taking the backpack itself by force. "Where the indictment charges both armed robbery and theft arising from a single transaction, theft by taking does not require proof of any facts separate from those required for armed robbery," and the theft merges into the armed robbery. *McDonald v. State*, 296 Ga. 643, 650 (770 SE2d 6) (2015) (citation and punctuation omitted). Consequently, we must vacate Wallace's convictions and sentences for theft by taking.

2. In his sole enumeration of error, Wallace contends that the trial court erred when it rejected his claim of selective prosecution. That claim was based on the disparate treatment of Wallace and Pindling, on the one hand, and Cortez, on the other. All three were charged with armed robbery, but only Wallace and Pindling were charged with murder. That the State did not charge Cortez with murder shows, Wallace says, that he was treated unlawfully. We disagree.

To make out a claim of unlawful selective prosecution, Wallace had "to show that his prosecution represent[ed] an intentional and purposeful discrimination which [was] deliberately based upon an unjustifiable standard, such as race, religion, or other arbitrary classification." *Coe v. State*, 274 Ga. 265, 267 (3) (a) (553 SE2d 784) (2001) (citations and punctuation omitted). Here, Wallace presented no direct evidence that the prosecuting attorney was motivated to treat Cortez differently because of her race, gender, or any other improper ground. Instead, Wallace argues that he and Cortez were equally culpable with respect to Pett's killing, and he claims that he and Cortez were equally cooperative with law enforcement. For these reasons, he says, invidious discrimination is the only possible explanation for the disparate treatment of Cortez. The record, however, does not show conclusively that Wallace and Cortez were equally culpable, nor does it show that they were equally cooperative with law enforcement.

About culpability, Wallace and Pindling were longtime friends and associates, whereas Cortez had known them only for about a week. Wallace and Pindling established a relationship with Pett after they arrived in Georgia. Cortez also had a prior dealing with Pett — she bought marijuana from Pett a few days before the killing — but at the time of that encounter, she was accompanied by Wallace and Pindling and at the home in which they were staying. Wallace and

Pindling originally proposed a robbery to fund their trip to New York, and Wallace was the one who suggested Pett as a target of the robbery. Wallace took the lead in arranging the meeting with Pett on the afternoon of the killing, and although Cortez spoke with Pett about the meeting, Pett evidently considered the meeting to be with Wallace and Pindling.[2] Wallace drove the three accomplices to and from the crime scene, and between the time of the killing and their departure for New York, Wallace drove to the home in which he and Pindling had stayed, where he and Pindling disposed of Pett's gun. Wallace and Pindling gathered personal items for their trip to New York, whereas Cortez accompanied them to New York without her cell phone or a change of clothes. Pindling testified in his own defense at trial, and he said that he tried to prevent Cortez from even coming to New York. Wallace and Pindling did not permit Cortez to drive the rental car, and when they got to New York, Cortez stayed alone in the basement of the home of Wallace's mother, and Wallace only let her use his cell phone to place a short call to her mother.

As for cooperation, the record does not support the claim that Wallace was just as consistently honest with investigators as Cortez. Although Wallace initially agreed with a statement given to investigators by Cortez, he later claimed to investigators that Cortez was the mastermind of the crimes. Cortez, on the other hand, gave testimony at trial that was generally consistent with her statement.

The record does not clearly show that Wallace and Cortez were equally culpable, nor does it clearly show that they were equally cooperative with investigators. Absent more direct evidence of discriminatory animus, the circumstances of this case do not show unlawful selective prosecution. "Prosecutors are vested with discretion in deciding what charges to bring against which defendants based on evidentiary considerations such as those present here." *Russell v. State*, 222 Ga. App. 475, 476 (474 SE2d 673) (1996). Accordingly, the trial court did not err when it rejected the claim of selective prosecution. Other than the convictions and sentences for theft by taking, we affirm the judgment below.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*J. Converse Bright*, for appellant.

---

[2] Pett's sister testified that Pett was killed after going to meet with two men from New York, whom Pett had met at a sporting goods store.

*J. David Miller, District Attorney, Catherine H. Helms, Jessica W. Clark, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.