316 Ga. 119
FINAL COPY

S22A1166. NORRIS v. THE STATE.

BOGGS, Chief Justice.

Appellant Jaquest Deeric Norris challenges his 2018 convictions for felony murder and cruelty to children in the first degree in connection with the beating death of a child, eight-month-old Monte Jones.[1] Appellant contends that the evidence was legally

---

[1] The crimes occurred on November 9, 2015. On February 26, 2016, a Fulton County grand jury indicted Appellant for malice murder, three counts of felony murder, one count of cruelty to children in the first degree for causing blunt force trauma to the head, one count of cruelty to children in the first degree for causing blunt force trauma to the leg, aggravated battery, aggravated assault, and aggravated sexual battery. At a trial from February 26 to March 1, 2018, the jury found him guilty of three counts of felony murder, cruelty to children in the first degree for causing blunt force trauma to the head, aggravated battery, and aggravated assault. The jury acquitted Appellant of malice murder and the other count of cruelty to children in the first degree, and the aggravated sexual battery count was dead docketed. The trial court sentenced Appellant to serve life in prison without parole for felony murder predicated on aggravated battery and a concurrent twenty-year sentence for cruelty to children in the first degree. The trial court merged aggravated assault with aggravated battery, merged aggravated battery with felony murder, and vacated the remaining felony murder counts.

This Court dismissed Appellant's first appeal on October 19, 2021, because Appellant had not followed the interlocutory appeal procedures, which were required because the dead-docketed count remained pending in the trial court. See *Seals v. State*, 311 Ga. 739 (860 SE2d 419) (2021). Also on October 19, 2021, the State filed, and the trial court granted, a motion to nolle pros the

insufficient to support his convictions. Appellant also contends that trial counsel provided constitutionally ineffective assistance by failing to impeach one of the State's expert witnesses, Dr. Deborah Young, with evidence that Monte had two healed fractures in his left leg after Dr. Young testified that she recalled Monte having only recent fractures. Because we conclude that the evidence was legally sufficient to sustain Appellant's convictions, and because Appellant fails to show prejudice from any alleged deficiency in trial counsel's actions, we affirm.

1. Although the Attorney General raises a question regarding

dead-docketed count. On November 9, 2021, Appellant filed a motion to vacate and reenter the orders denying the motion for new trial and granting the motion to nolle pros the dead-docketed count, arguing that the trial court lacked jurisdiction. On November 12, 2021, the trial court vacated both orders and then reentered the order denying the motion for new trial. However, the trial court did not reenter the order granting the motion to nolle pros the dead-docketed count until November 16, 2021. An appeal was docketed for a second time with this Court, but we dismissed that appeal on May 17, 2022, as the order denying the motion for new trial was not legally valid because it was entered while the dead-docketed count remained pending. See *Southall v. State*, 300 Ga. 462, 466 (796 SE2d 261) (2017); *Pounds v. State*, 309 Ga. 376, 380 (846 SE2d 48) (2020). On June 13, 2022, the trial court vacated its order denying the motion for new trial and reentered the order on June 14, 2022. The case was docketed in this Court to the August 2022 term and submitted for a decision on the briefs.

the Court's jurisdiction to hear this appeal, we have previously decided that issue. In dismissing Appellant's second appeal, this Court's order stated that "[i]f, upon the return of remittitur, the trial court enters an order denying the appellant's motion for new trial, the judgment of conviction will stand, and the previously filed notice of appeal will ripen." Order at 2, *Norris v. State*, Case No. S22A0797 (May 17, 2022). Under the law-of-the-case rule, the Court's prior determination is binding here. See OCGA § 9-11-60 (h).

2. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In early October 2015, Appellant began staying at his mother's home in the Deerfield Garden Apartments in Fulton County with his two children and five siblings. His mother lived downstairs from the home of Jasmine Jones and her three children, including Monte. Shortly after his arrival, Appellant and Jasmine struck up a relationship, and Appellant and his children occasionally began staying overnight at Jasmine's apartment.

On the night of November 8, 2015, Tracie Bryant, who lived in

3

the unit across the hall from Jasmine, took her daughter to Jasmine's apartment and stayed there for 30 to 40 minutes. During the visit, Monte laughed and did not appear to be in any pain. At around 7:00 on the morning of November 9, Appellant went to Jasmine's apartment and fell asleep in bed with her and Monte. At around 8:00 a.m., Appellant woke to the sound of Jasmine panicking about an eviction notice that she found on her door. Appellant went downstairs to talk with his mother about the notice, then returned to Jasmine's apartment and went back to sleep. At around 10:00 a.m., Jasmine awakened Appellant to tell him she was going to work and leaving her children with him. Appellant fell back asleep in the bed with Monte, and Jasmine went to her job at a CVS Pharmacy about 18 miles away. CVS computer logs and surveillance footage confirmed that Jasmine started work at 10:21 a.m. and took a lunch break between 12:40 and 1:15 p.m.

At around 2:40 p.m., Appellant brought an unresponsive Monte downstairs and told Daeshonn Norris, Appellant's sister, that Monte had drowned. Although Appellant asked that she not call 911,

4

Daeshonn called 911 at 2:42 p.m. and told the operator that her brother said Monte had swallowed water and was not breathing. The 911 operator walked Daeshonn and Appellant through performing CPR on Monte. Appellant then called Jasmine at work and told her that Monte had drowned. Emergency services responded to the scene and took Monte to Children's Hughes Spalding Hospital. At the hospital, Monte was intubated to assist with breathing and, after undergoing a physical examination and a chest x-ray, was transferred to the Pediatric Intensive Care Unit at Scottish Rite Hospital for further treatment. At Scottish Rite, Monte underwent a CT scan and further x-rays, which revealed skull fractures, rib fractures, two fractures in his left leg, a fracture in his right leg, a fracture in his right wrist, and brain swelling. Two days later, on November 11, Monte was pronounced brain dead and his life support withdrawn.

On November 29, Appellant was taken into custody. He waived his rights under *Miranda*[2] and gave a video-recorded interview in

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

which he stated that, after waking up around 1:00 p.m., he discovered Monte on the bed beside him with a diaper full of feces. While attempting to clean Monte in the bathtub, Appellant left the bathroom briefly after hearing a loud noise in the other room, which turned out to be the other children kicking a door. Appellant claimed that, upon his return to the bathroom, he found Monte face down in the tub and that Monte spit up water when Appellant picked him up.

At trial, multiple experts opined that Monte's injuries stemmed from blunt force trauma rather than drowning. Dr. Deborah Young, a pediatric emergency room physician who treated Monte at Hughes Spalding, testified that Monte's injuries looked like nonaccidental trauma, based on a physical examination and chest x-ray. Dr. Young also testified that after reviewing the CT scan and x-rays performed on Monte at Scottish Rite, she recalled only recent — less than two-week-old — fractures among his injuries. Likewise, Dr. Tamika Bryant, a child abuse pediatrician who examined Monte at Scottish Rite, testified that Monte had skull fractures and brain swelling

6

resulting from blunt force trauma.

Dr. Michael Heninger, the medical examiner who performed an autopsy on Monte, opined that Monte's cause of death was blunt force trauma to the head. In addition, Dr. Heninger testified to the presence of other injuries indicative of blunt force trauma but that did not contribute to the cause of death, including rib fractures and a fractured left tibia and fibula. Dr. Heninger concluded that the leg fractures and some of the rib fractures occurred at the same time as the blunt force trauma to the head. However, Dr. Heninger also noted that some of the rib fractures had signs of healing, meaning they were older than two weeks, and that Monte had a number of old, healed scars on his lower back and buttocks that were unusual for a child of his age. Dr. Heninger testified that injuries as severe as Monte's head injuries would normally cause immediate symptoms and would have caused Monte to stop functioning immediately.

Jasmine testified that Monte was acting normally when she left for work. Appellant elected not to testify in his own defense, but

7

the State played the video recording and entered into evidence a transcript of his November 29 interview. The defense theory was that Jasmine was abusive and caused Monte's injuries before she left for work. At trial, the defense did not call any witnesses or introduce into evidence any exhibits. At a motion-for-new-trial hearing, trial counsel testified, and appellate counsel entered one exhibit into evidence, a page of Monte's medical records describing two healed fractures in his left leg.

3. Appellant argues that the evidence at trial was insufficient to support his convictions either as a matter of constitutional due process under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), or because the circumstantial evidence presented at trial did not exclude every reasonable hypothesis save that of his guilt as required by OCGA § 24-14-6. We disagree.

The proper standard of review for sufficiency of evidence as a matter of constitutional due process is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson*, 443 U. S. at 319. This Court views the evidence

8

in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (cleaned up).

Further, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. The evidence presented at trial "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." *Merritt v. State*, 285 Ga. 778, 779 (683 SE2d 855) (2009). "[W]hether an alternative hypothesis raised by the defendant is reasonable is a question committed principally to the jury, and . . . we will not disturb [a jury's] finding unless it is insupportable as a matter of law." *Long v. State*, 309 Ga. 721, 726 (848 SE2d 91) (2020) (cleaned up).

Here, there was sufficient evidence as a matter of constitutional due process to support Appellant's convictions for felony murder and cruelty to children in the first degree. Tracie Bryant testified that Monte laughed and played the night of

9

November 8, and Jasmine testified that Monte was acting normally when she left for work. Further, despite Appellant spending the night at Jasmine's apartment, waking up several times, leaving the apartment at one point and returning, and sleeping in the same bed as Monte, Appellant never mentioned noticing anything unusual about Monte before Jasmine left for work. After Jasmine left for work, computer logs and surveillance footage showed her working at a CVS 18 miles from her home, with only a 35-minute lunch break, until Appellant called her that afternoon to claim that Monte had drowned. Appellant has never disputed that he had sole responsibility for Monte from the time that Jasmine left for work until he brought Monte downstairs to Daeshonn for help (though Appellant asked his sister not to call 911), at which point Monte had suffered the blunt force trauma to the head that led to his death.

Although Appellant argues that he told a consistent story that should be credited over Jasmine's inconsistent testimony and supports the reasonable hypothesis that Jasmine caused Monte's injuries, the jury was authorized to weigh the credibility of

Appellant and Jasmine in light of the evidence and exclude that alternative hypothesis. Because the jury's finding was not "insupportable as a matter of law," *Long*, 309 Ga. at 726 (cleaned up), the evidence also was sufficient under OCGA § 24-14-6 for a rational trier of fact to have found Appellant guilty beyond a reasonable doubt of felony murder and cruelty to children in the first degree.

4. Appellant next contends that trial counsel provided ineffective assistance by not impeaching Dr. Young with the evidence of two healed leg fractures potentially predating Appellant's arrival in Georgia. Because Appellant cannot show *Strickland* prejudice, we disagree.

To succeed on a claim of ineffective assistance of counsel, Appellant must show both that "his counsel's performance was professionally deficient and that he suffered prejudice as a result." *Washington v. State*, 313 Ga. 771, 773 (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)). To prove that his lawyer's performance was

11

professionally deficient, an appellant "must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Davis v. State*, 299 Ga. 180, 182-183 (787 SE2d 221) (2016). To prove prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 183 (cleaned up). A reasonable probability is one that is "sufficient to undermine confidence in the [trial's] outcome." *Neal v. State*, 313 Ga. 746, 751 (873 SE2d 209) (2022) (cleaned up). If an appellant "fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part." *Washington*, 313 Ga. at 773.

Pretermitting whether trial counsel acted deficiently in failing to impeach Dr. Young with evidence of the healed leg fractures, Appellant fails to show the required prejudice. Dr. Heninger testified extensively as to the type, extent, and timing of Monte's injuries, including newer fractures in Monte's left leg. Dr. Heninger also testified to older injuries, namely rib fractures and unusual

12

scars on Monte's back and buttocks, both of which predated November 9. However, Dr. Heninger concluded that blunt force trauma to the head caused Monte's death. Thus, evidence that Appellant did not cause any of the injuries to Monte's legs would not necessarily disprove that Appellant caused Monte's death. Indeed, the jury *did* acquit Appellant of cruelty to children in the first degree by causing blunt force trauma to the leg. Additionally, although Appellant argues that leg fractures older than two weeks would support the broader theory that Jasmine abused Monte, Appellant arrived in Georgia in early October, more than two weeks prior to November 9, and had the opportunity to cause the leg fractures. The mere assertion that Jasmine caused Monte's healed leg fractures is therefore not "sufficient to undermine confidence in the [trial's] outcome." *Neal*, 313 Ga. at 751 (cleaned up). Appellant's claim of ineffective assistance of counsel also fails.

*Judgment affirmed. All the Justices concur.*

Decided February 21, 2023 — Reconsideration denied March 30, 2023.

Murder. Fulton Superior Court. Before Judge Krause.

*Kevin A. Anderson*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, David K. Getachew-Smith, Sr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.